## PROCEEDINGS FOR A JOINT COUNTY DITCH IMPROVEMENT.

Common Pleas Court of Defiance County.

A. M. ANDERSON ET AL v. J. W. MILLER ET AL.

Decided, 1911.

*Ditches—Validity of Bond for Joint County Ditch Improvement—Sufficiency of Joint Meeting of County Commissioners—View for Purpose of Locating and Establishing Ditch—Adjourned Meeting of County Commissioners Not Effective where Held Without Notice to Interested Parties—Section 6537.*

1. A bond, filed with an application for a joint county ditch improvement and signed by one of the petitioners as principal and by two other petitioners as sureties, is sufficient.

2. A single joint meeting of the commissioners of two counties, at the head of the main line of a proposed joint county ditch, without the holding of other meetings as to the laterals, is sufficient.

3. It is not necessary that all the members of the joint board, or a majority of each board, should be present to constitute a sufficient "view" for the location and establishment of the route for a proposed joint county ditch.

4. Adjournment of a joint board of county commissioners without fixing a day or place for the next meeting, after voting down a motion to approve the engineer's report concerning a joint county ditch, is an adjournment *sine die*, and no presumption of knowledge of any proceedings of the joint board after such adjournment is raised by an entry on the record of a later meeting, reciting

> that it was held "per agreement," where such later meeting was in fact held without notice; and in the absence of a showing that interested owners had knowledge that such a meeting was to be held, injunction will lie to prevent the carrying out of the improvement; but if the joint board fixes a time and place for a new hearing and gives notice thereof to interested parties, proceedings relating to the ditch may be continued and completed as from the adjourned meeting.

A number of land owners filed their petition with the county auditor of Defiance county, Ohio, and a duplicate or a copy thereof with the county auditor of Paulding county, praying that the joint board of county commissioners of these two counties order an improvement by deepening, widening and straightening, of a natural water-course known as Gordon Creek, situated partly in each of these counties, and for like improvement of certain tributaries of that creek, all having a common outlet through the main stream into the Maumee river in Paulding county. Along with the petition a bond was filed in and upon which one of the petitioners was designated as principal, and two others of the petitioners as sureties. The joint board met at stake "O" of the main improvement, but did not meet at stake "O" of any of the tributaries or laterals. From stake "O" of the main improvement a majority of each board, and therefore a majority of the joint board "viewed," at least in a general way, and for substantially all of the distance, the line of the main improvement as well as the lines of the several laterals. The evidence tended to show that portions of the journeys along the different lines of the improvement were taken in carriages at some considerable distance from the proposed improvement and that in thus "viewing" the proposed improvement and the lines thereof, members of the individual boards, sometimes one and sometimes two, did not see and therefore did not "view" the whole line of any one of these water-courses. That some of the members rode a while and then walked a while, thus changing off from time to time. In other words, while it is true that two members of each constituent board were always passing along the line of and "viewing" these creeks, the personnel of the individual boards, and, therefore, of the joint board, was not always the same. After the meeting at stake "O" of the main line of-

the improvement and the "view" had as above stated, the joint board granted the prayer of the petition and appointed an engineer to survey and make estimates in the usual way. The engineer had filed his report prior to March 31, 1909, on which date the joint board, in pursuance of a previous adjournment to that effect, met at Cecil, Paulding county. At that meeting a motion to approve the engineer's report was duly voted upon and lost. Thereupon, the joint board adjourned without fixing or announcing day or place for another meeting. In July, 1909, without having caused any notice of such meeting to be given, the joint board met at Defiance and again took up the proceeding or attempted to do so. The entry upon the journal of the commissioners of this last meeting recites that the joint board met "per agreement." Upon this state of facts the plaintiffs—180 in number—insisted that the proceedings of the joint board were fatally defective and should be perpetually enjoined: First, because the bond was insufficient and conferred no jurisdiction; second, because the "view" was invalid and that the joint board did not thereby acquire jurisdiction to proceed; third, that the joint board lost jurisdiction, if it ever had any, by the adjournment of March 31, 1909.

*H. & R. Newbegin,* for plaintiffs.

*R. H. Sutphen,* Prosecuting Attorney, and *Harris & Shaw,* contra.

BAILEY, J.

The court will proceed at once to what were in the hearing called jurisdictional questions, that is, questions raised by the plaintiffs against the jurisdiction of the joint board of commissioners.

1. The bond was sufficient. *Keys* v. *Williamson,* 31 Ohio St., 561; *Anderson* v. *Commissioners,* Defiance Circuit Court (not reported).

2. A single meeting at the head of the main line of the improvement was sufficient. The statute (General Code, 6537) does not require other meetings to be held upon the laterals. The general purpose of this initial meeting is to give the land owners an opportunity to be heard for and against the proposed im-

provement. A single meeting accomplishes that purpose as well as any greater number would.

3. The court finds that in traveling along the route of the proposed improvement a majority of both boards and, therefore, a majority of the joint board, substantially complied with the statute. When it is remembered that all the lines of this improvement follow natural water-courses, it would be exceedingly technical to hold that, because not all, nor a majority of each board of commissioners saw every foot, or even every quarter of a mile, of every one of these several natural water-courses, the board failed to acquire jurisdiction. The court is unwilling to go that far.

4. The adjournment at Cecil, March 31, 1909, without fixing time or place for another meeting, presents a more serious question. In ditch proceedings but one notice is required, but it seems to the court that such notice should be kept good by a continuity of adjournments. *The Euclid Ave. Sav. & Bank. Co.* v. *Hubbard*, 22 C.C., 20.

In *Sheidler* v. *Commissioners Putnam County*, a case recently decided by the Circuit Court of Putnam County (unreported), the four-county joint board adjourned April 12, 1905, as follows:

"Moved by George, seconded by Hampshire, that this board adjourn to meet at call of the president. All voted yes; motion carried."

In the opinion of the circuit court rendered by Hurin, J., they disposed of a troublesome question in the following language:

"We are of the opinion that the joint board might adjourn to meet subject to the call of its chairman if the necessities of the case so required. The delay occasioned by the case in Wood county and the delay now occasioned by this proceeding are illustrations of the fact that it would be impossible for a board to adjourn under such circumstances to a fixed date or from day to day. Our Supreme Court has held that the powers conferred upon the commissioners in the statutes relating to ditches are political and not judicial and the commissioners in their deliberations are by statute authorized to act in conformity with the known rules of parliamentary practice. The power to adjourn subject to call is fully recognized in parliamentary law, when the occasion may require and justify such adjournment."

This court does not feel called upon to decide as between these two circuit court decisions, assuming that they conflict, which this court does not now decide, for this court must follow its own circuit. In the case at bar the adjournment of the joint board was not to meet at the "call of the president." There was nothing in the situation to lead the land owners in attendance upon the Cecil meeting to understand or believe that the board would ever meet again. A motion to approve or adopt the report of the engineer had just been lost, and without any notice or hint of a subsequent meeting, the board adjourned. There was nothing to prevent the fixing of a time and place of meeting, as there was in *Sheidler* v. *County Commissioners, supra*. In that case the circuit court certainly reached a very liberal construction in sustaining the adjournment in question, and this court is not inclined to go beyond what is there held.

Notwithstanding the adjournment *sine die* of March 31, 1909, for that is what it amounts to by its terms, the joint board, without a new notice to the land owners, assumed to meet some two or three months later "by agreement" and take up and carry forward the improvement. The statute does not in terms require a second or new notice. The records show no such notice and in the judgment of this court upon the adjournment of March 31, the burden of proof was upon the defendants to show that the several hundred landowners, or at all events, these plaintiffs, were served with some kind of notice of the next meeting.

If without new notice to the interested parties subsequent meetings could be held and further proceedings had, then it might as well be said that all proceedings in ditch improvements, after the initial meeting at the head of the improvement, may be secret. The court does not believe that the right of the landowners and the citizens to be heard throughout the proceeding to final judgment can be thus cut off. There should have been some kind of *continuity of adjournments,* or a *new notice.* If this view of the situation is correct the jurisdiction and power to proceed stopped or became suspended March 31, 1909, and unless such jurisdiction and power have been recovered or revived, the board was not authorized to meet again. The court does not find anything in this record showing such recovery or revival.

This is a very large and important improvement, estimated to cost $66,000. It is proposed to issue bonds of the counties to pay the cost of the improvement in the first instance, and later collect the money from the assessed lands. This makes it important that the proceedings of the joint board be fairly and substantially regular and in accordance with law; otherwise great difficulty might be experienced in disposing of the bonds at a full price. And again, if the defendants should prevail in this case, many other interested persons who are not parties nor privies to the litigation might possibly institute new litigation from time to time individually or in groups, and in that way delay, worry and possibly wear out, in a sense, the public officers having to do with the collection of the assessments. It seems to the court that it would be much better for all parties to try to get a better record in this proceeding than we now have.

In this connection the court feels like suggesting that in a matter as important as this ditch improvement, involving the welfare of perhaps one-third of Defiance county, and the expenditure of so large a sum of money, public officials should be careful to proceed substantially according to law and avoid having such irregularities and omissions thrown upon a court with a single judge for decision. It is a matter of common knowledge among lawyers and courts in Northwestern Ohio, that it is with the greatest hesitation and reluctance that the courts disturb or hold invalid the acts of administrative officers and proceedings to establish public improvements. In the traditional language of an eminent jurist "Northwestern Ohio must be ditched, Constitution or no Constitution." But while the foregoing observations are true, it is also true that the courts can not brush aside all law and arbitrarily sustain a public improvement. The proceedings of inferior tribunals and courts are viewed with great liberality and are not set aside upon mere technicalities. But there should be a fair, a substantial compliance with the law.

Without going into detail and citing authorities, the court finds that the petition in this case is broad enough to reach the question and defect to which attention has been called, and that, notwithstanding the case of *Haff* v. *Fuller,* 45 Ohio St.,

495, a court of equity may restrain as against this jurisdictional defect. All opportunity to be heard was cut off. For aught that appears here many of these plaintiffs may never have heard of any proceedings in this improvement after March 31, 1909, nor until the right of appeal had been lost by limitation. *Miller* v. *Commissioners Logan County,* 3 C. C., 617.

No presumption arises upon the record of the ditch proceedings or upon this hearing that any of the plaintiffs had knowledge or notice of the proceedings of the joint board after March 31, 1909. It was encumbent upon the defendants to show such notice or knowledge, or legal opportunity for such knowledge. They have not done so. Therefore this case comes within the decision last cited.

For the above reasons the temporary injunction is made perpetual with this exception or modification: If the joint board should conclude to come together, fix a time and place for a new hearing and give proper notice thereof to all of the plaintiffs in this case and then at such new meeting take up the proceeding where it was left off at Cecil, March 31, 1909, they have the permission of this court to do so; and they will not be in contempt of this court if they take up the proceedings and carry them forward from that date to completion. The court does not attempt to guarantee the validity of such proceeding. But under the general scope of equity jurisprudence courts are not much concerned with mere irregularities or even serious errors unless the rights of the citizen are thereby cut off or seriously curtailed. This is especially true in view of our remedial and curative statutes, General Code, 6499, 6500. But these statutes do not cure nor save jurisdiction where there was none.

An entry may be prepared and spread upon the journal in accordance with the foregoing decision, saving exceptions and appeal to both sides and all individual parties desiring the same. Bond $500 for the combined parties and $200 each for individuals in case a single individual separately appeals.